Today is the case of People's State of Illinois v. Leon Richardson, and we have Mr. Dan Evers for the appellant, we have Mr. Kempting for the athlete. Good afternoon, Your Honors. This is the case of People v. Leon Richardson, who is found guilty of one count of burglary, a burglary of the Route 3 liquor store in Saw J. I'd like to address two issues today before the court, whether the evidence is sufficient to sustain the conviction of burglary by remaining within the building, and that he should be granted a new trial because of improperly admitted hearsay evidence by three police officers, ostensibly to explain the course of their investigation, but which really did not further that goal. Turning to the sufficiency of the evidence, under Section 19-1A of the Criminal Code, a person commits burglary when without authority knowingly enters, or without authority remains within a building, with intent to commit therein a felony or a theft. Now, you will not find too many cases that interpret the meaning of that. Without authority remains within a building. The cases that I found is People v. Valero and People v. Green, they're from 78 and 80. So, this is a matter in which this statutory section has not been interpreted very often, and it's something that makes me scratch my head sometimes when the state is doing something in the burglary area. There's no doubt that he didn't remain within, is there? Because he left and stupidly went and tried to cash the lottery ticket. Well, you can assume that he tried to go cash the lottery tickets, but the clerk from that store never testified to that. But I think that supports you that he didn't remain within. Yeah. The state went entirely upon the legal theory that he remained within, and drops the count that he entered without authority. Well, he went in, it was open for business that day, he went in to do something, so he was lawfully entering, right? There was a lawful entry within the building. What about the point where he goes into the employee-only section of the building? Does he have authority to be there? It's marked as employee-only, but there are lots of reasons why in a store somebody might go into such an area, such as looking for a wrestler. Does he have authority to go in there? Almost everybody who was looking for authority would say that they think they have authority to go in there. I'm talking about legal authority, not whether or not I'm looking for a wrestler. In terms of the statute and thinking about it, you probably could say that he did not have authority at that time. But he's not remaining within the building at that time. He's in the building. He has not entered the building. So the state's theory is that he remained within the building without authority, but that authority was allowed earlier, and it's a very difficult conceptual idea for me to get over that the state gave up any attempt to say that he entered this building with an intent to commit theft, but he remained within it with the intent to commit a theft. And apparently the state's theory is that once he committed the theft, he had committed burglary, which, again, gets back to that that just seems to be wrong. In Valero, the defendant was convicted of burglary and the appellate court reversed, and that was business building and dairy in which the defendant had gone in. He was authorized to enter. It was open for business. And the only evidence of the burglary was that later on checks were found to have been stolen and that he was involved in the forgery. And so in Valero, they say there was no remaining within the building, and no showing that he had entered with the intent to commit a theft without authority. Green talks about Valero. It's not directly on point in reversing on such matters, but it talks about the need for some kind of hiding, some kind of secreting yourself within the building to be able to commit that theft, that felony. But why is he entering an area that's unauthorized for the public to enter? Why could that not provide that intent of remain within with the intent to commit theft? Well, he's gone into the storage area that the employees of the liquor store, the store, are going through, will be going through. He's not really secreting himself and hiding from them within that area because they're always going to be going through and trying to get merchandise or put merchandise or find something that they need within the store. So this is an area, while it's called a storage area, it's pretty large, and that it's not someplace that he's going in to hide so that he can commit some kind of theft or felony later on. So criminal intent formulated after lawful entry does not equal burglary. That's right, and there are several... Valero interprets a case called People v. Weaver from the Illinois Supreme Court, and that's directly from People v. Weaver. You have to have the intent before you enter for the unlawful entry by entering without authority. And if you look at the concurrence in Valero by Justice Stengel, you'll find the discussion of what you really have to do to be guilty of burglary by remaining within, and this is the best line of analysis that I can find for this statutory language, and that you just cannot be entering the building with a lawful purpose and then steal based upon this very immediate window of opportunity. You have to be secreting yourself, you have to be hiding, you have to be doing something to make sure that you can do something later on. And the usual thing for that is somebody entering a building, hiding away for when the building can be vacated, and then when people are gone, stealing something. And that is kind of the idea that Justice Stengel has, and that is mostly what I think most people would believe was the idea behind what this statute is trying to go to. Again, if this is just not something, not a crime of opportunity, then somebody goes into a retail establishment, is walking down the aisles, decides right at that moment that they're going to commit a retail theft and take something. At that moment, under the state's theory, they have just committed a burglary. And there has not been any cases that have ever said that in the many years that there's been a burglary statute. Consequently, Your Honors, we had asked you to reverse the conviction. I may talk about the new trial evidentiary question on the butthole, but I have an opportunity. Thank you. Thank you, Mr. Evers. Thank you, Mr. Tang. Mr. Chairman, please record. My name is Timothy James Stengel, and I represent the state of Illinois in this matter. Your Honors, if I'm correct, there are two issues on the field. One, whether the defendant was proven guilty beyond the least of the doubt of burglary, and two, whether the trial court probably admitted several offenses, water, and parsing testimony, and hearsay exception, commonly known as the explanatory exception for the hearsay. Now, going to the sufficiency of the evidence first. Your Honors, the defendant is correct. This is a case of first impression. No case in Illinois has ever interpreted the statute with this particular factual pattern. And the state acknowledges that. And as the statute states, the defendant, again, correctly notes, 720 ILSC S5-19-11A states that the elements that must be proven by the state beyond reasonable doubt are that the defendant knowingly remained in a building without authority with the intent to commit a theft. Now, as far as the identity of the defendant and the intent to commit a theft, Your Honors, the record clearly speaks for itself. I would point this court specifically to People's Exhibit 1, particularly the folder of delivery, which actually shows the videotaped evidence of the defendant actually in the remaining room, in the employee's only room, committing the theft, as well as Reg. 2 showing the defendant entering and exiting from that, as well as the testimony, which you can find on several places of the record. Most of this would be found as corroborated testimony of the assistant manager and the shift manager, which you can find on page 180. How do you remain within when you leave? This is how. Okay. We have a case where when a defendant comes into a building as a public invitee, clearly they have authority to enter into that building. But when a person, anyone who has authority to say that defendant cannot stay in that building, then they lack that authority. And if they remain in that building and say – if someone says to – for example, a manager says to a defendant who walks into a building, a public invitee, you can't come into this building. And then the defendant says, I hear what you're saying, takes a candy bar, walks out of the building. That is burglary, because at that point he has no authority to remain in the building for whatever reason, and presuming this is a valid reason. And two, he has committed that theft, an intent to commit theft. However, we don't see circumstances like this very often. However, we will see a circumstance where a defendant, say, secretes himself or hides the night after store hours. Clearly, remaining in the building at that point is no – That's easy. That's easy. Absolutely. He has no public invitee status. But we have to understand the policy, the rationale behind the rule of law. The rationale for after hours is that he doesn't have that public invitee status. In the same way, the defendant lost his status as a public invitee as soon as he entered that employees-only room. No longer does the defendant have the status as a public invitee, but rather the defendant knowingly entered between a section of the building without authority. The defendant then remained in the building to commit his theft. If the defendant, for example, had gone to the employees-only room and then left the employees room and then committed a theft outside of the employees room, that would not be a burglary. Because at that point, again, that would only be a theft. He is a public invitee in that particular section of the store. But by committing the theft inside of the employees-only room, he has lost his public invitee status, and he commits a theft within that room, thus qualifying for burglary. And, Your Honors, I would point again to the rationale behind the rules of law. We should not mechanically apply statutory language in such a way that it circumvents the very intent of the legislation. The difference between a theft and a burglary is that there is more of a significant damage by a burglary. That's what the legislature intends by creating a higher class for burglaries. Is the record clear that this employee-only room is significantly identified as such? Absolutely. And you can see it? Absolutely. And it's up high and he's real short or something? I would point this court specifically to the evidence that you can find on page 132, 134 and the property of testimony at 164 that Ms. Poynter and Ms. Hurley, both managers at that Route 3 liquor store, said that the defendant could not enter that room, nor was he an employee. Then, if we look at the door, simply looking at the door, there's not one, not two, but three signs which say clearly employees only. And you can find that on the record at page 118 to 119 as well as People's Exhibit 13 and 14, which show clearly that this is a part of the section of the store where there is no authority. I mean, not one, not two, but three. These are multiple indications. The defendant cannot go in there. The defendant was not an employee, as the record clearly establishes. And, again, I would point this court to Ms. Hurley and Ms. Poynter's testimony. Now, granted, this has never been addressed. This is an issue of first impression in Illinois. And the defendant cites Valero, Green, and Leithner. And while the state does acknowledge those cases, in some way interpret 19-1A, what they do not interpret is this particular factual scenario. But I posit to you that states outside of this state have interpreted this exact same scenario with similar staff. I point this court to a Louisiana court in State v. Noel, a New York court in State v. McKinney, an Ohio court in State v. Cooper, a Pitts court in Utah. And I point this court to an Arkansas court in Sims v. State. And as the Noel court so eloquently stated, and I quote, although entry into a building open to the public during given hours is considered as an authorized entry with the implied consent of the owner, the implied authority extends only to the designated public areas and not to private or employees-only areas of the building. Again, we have to look at the rationale behind the rule. The reason that a class of felony is exacerbated because of burglary is because there's the added dimension of hiding or secreting or doing something without authority. It goes beyond mere theft. And surely, when a defendant goes into a store, secretes himself in an employee's only room, this is the exact type of situation that the legislature was intending for. This is not merely a theft. This is more than a theft. Because this shows that willful deliberate action. Do we have legislative history that indicates and supports that? We have no legislative history. And again, the state really concedes that. Both the defense and the state are open to the fact that this really has never been addressed. Let me ask you another question. In these other states, was it a fact that the defendants in those cases entered an employee's only room, no doubt, and then left the building? Yes. And then were convicted of burglary? Absolutely. Okay. Now, there's no particular ‑‑ I can't point to a particular aspect within the case that says immediately after they left. But if you read the case ‑‑ It was during open hours. It was during open hours. They went into an employee's only room. They committed a theft, and then they left. Those facts are analogous to this case. And so I would point this, and I urge this court to publish an opinion that shows that Illinois follows this litany of cases from Arkansas and Ohio and New York and Louisiana. That it has the public policy that the legislation was intending. While it does say something like state history, again, common sense and logic dictate that when someone goes into an area of a building, which they are not allowed to go into, then that increases the amount of penalty that the court should have available to it, and the state should be able to prosecute it. Do you have any more questions on that particular point? Now, Your Honor, just briefly going through the explanatory exception that is applied here in Issue 2, I would just quote a few rules of law to briefly illustrate what we're going through. Here, officers Lee, Parsi, and Waters all stated that they were investigating leads either on February 19th or February 20th regarding the alleged burglary and kind of gathering evidence of how they showed up at these particular places. The burglary was committed on February 18th. Now, the officers, in doing so, explained how they were getting to the particular places where they were going in their investigation, referring to as they call leads. Now, the explanatory exception to the hearsay rule says that officers are allowed to do this. I would quote from the Cameron Report in the Fourth District, which states, and I quote, an arresting or investigating officer should not be put in the false position seeming just to have happened upon the scene. He should be allowed some explanation of his presence and conduct. This has become known as the explanatory exception rule to hearsay, which states, hearsay rule allows the admission of statements to explain the progress of police investigation under the rationale that such evidence is not offered for the truth but for the police officer to explain how they got it. Now, I would state to this Court as a final note, as it seems my time is nearly up, that even if all three, officers Lee, Parsi, and Waters' testimony was all inadmissible hearsay, it does not matter. The reason it does not matter is harmless error. Here we have overwhelming evidence of guilt, and I would point this Court to three specific areas. Video evidence, which you can find in People's Exhibit 1, specifically in folders Delivery and folders entitled Reg. 2. You can find this in fingerprint evidence, and I point this Court to page 328, 342, 345 of the record. And I would point this Court to eyewitness testimony that is corroborated by both Ms. Pointer and Ms. Hurley at page 118 and 119, 147, 151, 164 to 166, and 197. We have three instances of clear evidence of the defendant's commission of burglary. Thank you for your time and your consideration. Thank you, Mr. Tate. Mr. Evers. Yes, Your Honor. Does the Court have any questions about the sufficiency of the evidence? Otherwise, I'll talk about the new trial issue. The improperly admitted evidence is not within the exception for explaining things. There was no need for what was put forward to the jury in this case. First of all, Sgt. Police Officer Lee testified that someone had attempted to cash in one of the stolen tickets, and that is not what the testimony of the clerk at that store was. We don't know whether any ticket that was attempted to be cashed in by Mr. Richardson was stolen or where it might have been stolen or where it came from. There was no testimony about that at all. And so Sgt. Police Officer Parise just repeats that to emphasize it to the jury that, indeed, that this is the evidence that there was someone attempting to redeem one of these particular stolen tickets. Now, the third police officer, Washington Park Police Officer Waters, he testified that when he arrived, he was told that Mr. Richardson, the subject, was driving the small white car. And that is that Mr. Richardson drove that small white car onto the Crown Food Gas Store area, and that in driving that, that ties Mr. Richardson even more firmly to that car. That was not the testimony either about what was going on. There is no testimony that Mr. Richardson drove that car onto the Crown Park parking lot, the gas station. With this, this is simply not relevant. All that was relevant was that they went there and that they arrested Mr. Richardson and that they seized this car. And one of the real interesting points about it's not really relevant and how things that are told to the police officers kind of get messed around and how these things are not based upon the testimony. Waters also testified that he went to the Crown Food parking store because an armed robber from Saussure was there. And there is really no testimony at all that there was any kind of armed robber. Consequently, when the jury is told all these things about what the police think they have been told and what the evidence is, that just enforces in their mind that there needs to be something done. And that is the prejudice. And more specifically, the prejudice is that it more firmly ties Mr. Richardson in the identification process. And while there is some good evidence against him, this is also used by the state to weigh down the identification in the jury's mind. Consequently, we would ask Your Honors to reverse and remand him in the trial if Your Honors do not reverse outright.  Thank you both for your briefs and your argument, and I'll take the matter under advisory.